UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NATIONAL WESTERN LIFE INSURANCE COMPANY,**

   Plaintiff,  :

 v.

**THE TROMBLAY IRREVOCABLE HERITAGE TRUST** *dated March 25, 2020*, :

   Defendant.

**Case No. 2:24-cv-00166**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

This matter is before the Court on the Motion for Default Judgment (Mot., ECF No. 23) filed by National Western Life Insurance Company. For the reasons set forth below, the Motion is **GRANTED**.

### I. PROCEDURAL HISTORY

National Western initiated this action against The Tromblay Irrevocable Heritage Trust in January 2024. (ECF No. 1.) The Trust was served with notice of process via certified mail pursuant to Rule 4 (ECF Nos. 6, 6-1) but failed to respond to the Complaint. Accordingly, on March 11, 2024, National Western applied to the Clerk for an entry of default pursuant to Rule 55(a). (ECF No. 7.) Default was entered the next day. (ECF No. 8.)

On March 26, 2024, National Western filed its first Motion for Default Judgment (ECF No. 9), to which the Trust did not respond. Upon review of the first Motion, the Court determined that National Western had not shown the existence of an actual controversy sufficient to establish the Court's subject matter jurisdiction under the Declaratory Judgment Act. (ECF No. 10, PAGEID # 102.) The Court declined to enter default judgment against the Trust and dismissed the case without prejudice to refiling. (*Id.*, PAGEID # 104.)

Shortly thereafter, the Court granted National Western's motion to reopen the case (ECF Nos. 12, 13), and National Western filed a First Amended Supplemental Complaint (Am. Compl., ECF No. 14). The Clerk issued a summons and copy of that Amended Complaint by certified mail to the Trust on June 26, 2024. (ECF No. 16.) Service was returned as executed on July 2, 2024. (ECF Nos. 18, 20.) When the Trust again failed to respond to the Amended Complaint before the established deadline, National Western again applied for and obtained an entry of default under Rule 55(a). (ECF Nos. 19, 21.)

Now before the Court is National Western's second Motion for Default Judgment (ECF No. 23). The time for responding has passed, and the Trust has filed no response.

## II.   FACTUAL BACKGROUND

"Once default is entered, the defaulting party is deemed to have admitted all of the well-pleaded allegations in the complaint regarding liability[.]" *Zinganything, LLC v. Import Store*, 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016); *see also* Fed. R.

2

Civ. P. 8(b)(6). The following factual allegations from the Amended Complaint (ECF No. 14) are deemed admitted due to the Trust's default.

On or about March 25, 2020, Linda Tromblay executed an application for individual life insurance from National Western with a face amount of $188,205. (Am. Compl., ¶¶ 7–8; Application, ECF No. 14-1, PAGEID # 192.) Ms. Tromblay was 85 years old when she signed and submitted the Application, along with a $150,000 single premium. (Am. Compl., ¶¶ 7–8.) The Application included a declaration by Ms. Tromblay[1] that (1) all answers in the Application were true and complete to the best of her knowledge; and (2) she understood that any material misrepresentations could void the Policy during the initial two-year incontestability period. (Am. Compl., ¶ 12; Application, PAGEID # 195.) The Application also stated that any applicant who knowingly presented false statements could be subject to criminal penalties. (Am. Compl., ¶ 13; Application, PAGEID # 195.)

Section VIII of the Application contained various inquiries about Ms. Tromblay's medical history and stated that "[i]f any question in Section VIII is answered yes, no coverage can be issued." (Am. Compl., ¶ 9; Application, PAGEID # 193.) In response to a question in Section VIII asking if she had ever "[b]een diagnosed by a member of the medical profession as having more than one occurrence or any metastasis of any cancer in your lifetime," Ms. Tromblay

---

[1] Trustee Jeffrey Tromblay and National Western Agent Todd White also signed the Application and declaration therein. (Application, PAGEID # 195.) National Western asserts that neither it nor Mr. White had any knowledge of the falsity or fraudulent nature of Ms. Tromblay's answers to the questions. (Am. Compl., ¶ 35; White Decl., ECF No. 23-2, ¶ 5.)

answered in the negative. (Am. Compl., ¶¶ 10–11; Application, PAGEID # 193.) Based on the contents of Ms. Tomblay's Application, National Western issued her a life insurance policy on April 27, 2020. (Am. Compl., ¶ 15; Policy, ECF No. 14-2, PAGEID # 198.)

Ms. Tromblay died on or about March 4, 2022. (Am. Compl., ¶ 18.) At the time of her death, the Policy's death benefit was valued at $190,500. (*Id.*) The Trust, administered by trustee Jeffrey Tromblay, is the sole beneficiary of the Policy's death benefit. (*Id.*, ¶¶ 3, 16.)

Following Ms. Tromblay's death, which was within the Policy's two-year incontestability period, National Western received a Claimant Statement from Mr. Tromblay that made a claim to the Policy's death benefit. (Am. Compl., ¶¶ 17–19; Claim, ECF No. 14-3, PAGEID # 236.) National Western subsequently collected Ms. Tromblay's medical records and learned that she had been diagnosed with breast cancer several decades earlier, with multiple recurrences thereafter. (Am. Compl., ¶ 20.) This information rendered Ms. Tromblay's response to the above-quoted question in Section VIII of the Application untruthful. (*Id.*) Had Ms. Tromblay included her accurate medical history in the Application, National Western would not have issued the Policy. (*Id.*, ¶ 21.)

National Western seeks recission of the Policy under Ohio Rev. Code. § 3611.06 and asks the Court to order that the $150,000 premium initially paid by Ms. Tromblay be remitted to the Clerk (due to the invalidation of the Policy) until such time as her estate can be opened and administered. (*Id.*, PAGEID # 189–90.)

4

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

National Western's first attempt at securing default judgment against the Trust was unsuccessful because National Western did not establish the existence of the Court's subject matter jurisdiction. (ECF No. 10, PAGEID # 102.) As the Court explained in its prior Order:

> The Complaint does not allege that the Trust has made a claim or is actively seeking to recover under the Policy, as also evidenced by its failure to participate in the instant action. Rather, the Complaint simply asserts that Ms. Tromblay included false statements in her Application responses such that the resulting Policy should be voided and the premium returned to Ms. Tromblay's estate. Indeed, it was National Western's unilateral collection and review of Ms. Tromblay's medical records that led to its discovery of the misrepresentations, not any claims or actions by Ms. Tromblay or the Trust. National Western represents that "[a]n actual controversy has arisen and now exists between the parties concerning their respective rights and duties under the Policy," but its Complaint seeks only a determination regarding speculative liability, contingent upon the Trust, at some point in the future, seeking to enforce the Policy … The current litigation is not inevitable where nothing suggests that the Trust intends to pursue its rights under the Policy either in this forum or in another federal or state forum.

(ECF No. 10, PAGEID # 103 (citations omitted).)

By virtue of its Amended Complaint, however, National Western has remedied these issues, such that the Court now has subject matter jurisdiction over this action. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (courts must determine subject matter jurisdiction before reaching merits of underlying action). National Western has demonstrated that Mr. Tromblay filed a claim against the Policy and "has followed up repeatedly" with National Western "to inquire as to the status." (Am. Compl., ¶¶ 19, 22; Claim, PAGEID # 236.) Because Mr. Tromblay is actively

5

seeking enforcement of the Policy, there exists an actual controversy between the parties sufficient to confer jurisdiction. *Cf., e.g., N. Am. Co. for Life & Health Ins. v. Crowell*, No. 3:20-cv-2027, 2021 WL 3167411, at *2 (N.D. Ohio July 26, 2021) (finding no standing or actual controversy in declaratory judgment action where insured not actively seeking policy enforcement and insurer's "potential liability rests on a factual situation that may never occur").

However, the Court's inquiry does not end there because the instant matter arises under the Declaratory Judgment Act. (Am. Compl., ¶ 26.) Although this Act affords the Court jurisdiction to grant declaratory relief, the Court is "under no compulsion to exercise that jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). Thus, prior to granting declaratory relief and entering default judgment in this case, the Court must determine whether it should exercise its jurisdiction to do so. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (courts may use discretion to determine whether to exercise jurisdiction to grant declaratory relief).

In the Sixth Circuit, courts consider five factors in deciding whether a case is appropriate for declaratory judgment:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

6

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). "The relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

National Western does not address these factors in its Motion for Default Judgment. Nevertheless, the Court finds that each *Grand Trunk* factor is met and that jurisdiction is appropriate. As to the first two factors, a declaration that the Policy is void *ab initio* and that the Trust is barred from recovering upon the Policy would define the scope of National Western's obligations to the Trust, settling the dispute between the parties and clarifying the legal relations at issue. There are no allegations or suspicions of "procedural fencing" or a "race for res judicata" here, so the third factor also weighs in favor of the Court's exercise of jurisdiction. Concerning the fourth factor, though there exists a state-court probate action with respect to the administration of the Trust (*see* ECF No. 14-4), the parties have not directed the Court to any other pending state court cases. Matters of insurance are generally left to state courts, so the Court's exercise of jurisdiction may create some potential for increased friction between the federal and state courts, but this does not weigh heavily under the facts of this case, given that there is no indication that a state court is considering the issues presented in the instant federal matter. Finally, there is no argument that a state court declaratory judgment action would be better or more effective than a federal court declaratory judgment action, such that the fifth factor does not cut against the exercise of the Court's jurisdiction.

Accordingly, because this case poses an actual controversy and satisfies the *Grand Trunk* factors for jurisdiction under the Declaratory Judgment Act, the Court considers the merits of National Western's default judgment request below.

**B.     Default Judgment**

Once default has been entered, the Court may rule on default judgment against the defendant with or without a hearing. Fed. R. Civ. P. 55(b). Although the well-pled factual allegations of a complaint are accepted as true for the purpose of determining liability, the Court must still determine whether those facts state a claim upon which relief may be granted. *Zinganything*, 158 F. Supp. 3d at 672 (citing *J&J Sports Prods., Inc. v. Rodriguez*, No. 1:08-cv-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008)). Nonetheless, "those allegations relating to the amount of damages suffered are ordinarily not [accepted as true], and a judgment by default may not be entered without a hearing on damages unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Brinager v. JAO Distribs., Inc.*, No. 1:14-cv-252, 2014 WL 3689147, at *1 (S.D. Ohio July 23, 2014) (Black, J.) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Courts may grant default judgment in declaratory judgment actions involving the question of coverage under insurance policies. *See Liberty Mut. Ins. Co. v. Petit*, No. 2:09-CV-111, 2009 WL 3241670, at *1 (S.D. Ohio Oct. 1, 2009) (Holschuh, J.) (citing cases).

8

Based on the well-pled allegations in the Amended Complaint and the exhibits National Western submitted in support of its Motion for Default Judgment, the Court concludes that there is sufficient basis for determining the Trust's liability and damages without the need for a hearing. National Western has stated a claim for recission of the Policy on account of Ms. Tromblay's responses on the Application. (Am. Compl., ¶¶ 25–36.) By its default, the Trust has admitted that Ms. Tromblay procured the Policy by affirmatively making material misrepresentations on her Application regarding her medical history. (*Id.*, ¶¶ 11, 30–33; Gunderson Decl., ECF No. 23-1, ¶¶ 6, 18.) National Western was not aware of the falsity of Ms. Tromblay's answer and would not have issued the Policy had Ms. Tromblay responded truthfully. (Am. Compl., ¶¶ 9, 35; Gunderson Decl., ¶¶ 20, 21; Application, PAGEID # 193 ("If any question in Section VIII is answered yes, no coverage can be issued.").) Pursuant to the terms of the Policy, her misrepresentations rendered the Policy void *ab initio* from its inception. (Am. Compl., ¶¶ 28, 36; Application, PAGEID # 193); *see also* Ohio Rev. Code. § 3911.06; *Frohn v. Globe Life & Accident Ins. Co.*, 667 F. Supp. 3d 715, 727 (S.D. Ohio 2023) (Cole, J.). National Western is thus entitled to default judgment against the Trust.

C. **Relief**

National Western seeks rescission of the Policy and authorization to pay Ms. Tromblay's initial premium into the Clerk's registry for holding until her estate is opened[2] so as to place the parties in the *status quo ante*. (Mot., PAGEID # 265, 271.)

---

[2] In August 2022, Mr. Tromblay applied to the state probate court for summary release from administration of the Trust under Ohio Rev. Code

9

The Policy indicates that the premium amount was $150,000. (Application, PAGEID # 192; Policy, PAGEID # 200.) Dennis Gunderson, Director of Underwriting and New Business at National Western, also testified to the premium amount. (Gunderson Decl., ¶¶ 3, 15); *see Profusion Indus., LLC v. Chem-Tek Sys., Inc.*, No. 5:16-cv-164, 2016 WL 7178731, at *6 (N.D. Ohio Dec. 9, 2016) (courts may rely on affidavits submitted by a plaintiff in support of damages without the need for a hearing). Accordingly, the Court finds that National Western is entitled to a declaratory judgment that (1) the Policy is rescinded, and (2) National Western may pay the initial premium ($150,000) into the Clerk's registry where it will be held until Ms. Tromblay's probate estate is opened and a representative of the estate can make a claim to the premium.

National Western initially sought recovery of its attorneys' fees, costs, and expenses incurred in litigating this matter (Am. Compl., PAGEID # 189), but it has since withdrawn that request (Mot., PAGEID # 271), so the Court need not consider the issue.

---

§ 2113.031, representing that the value of Ms. Tromblay's probate assets was the lesser of $5,000 or the amount of her funeral and burial expenses. (ECF No. 14-4, PAGEID # 241.) The state probate court granted him summary release. (*Id.*, PAGEID # 248.) Because Ms. Tromblay individually paid the $150,000 premium that must be returned, that premium is considered a probate asset returnable only to her estate. (Gerken Decl., ECF No. 23-3, ¶ 8.) Including the $150,000 premium in her assets, however, would render summary release inapplicable, meaning an estate must be opened. (*Id.*) As of the date of this Order, there is no indication that an estate for Ms. Tromblay has been opened.

10

## IV. CONCLUSION

For the reasons set forth herein, National Western's Motion for Default Judgment (ECF No. 23) is **GRANTED**. Default judgment is entered against the Trust on Count I of the Amended Complaint. The Court **AWARDS** relief for National Western against the Trust in the form of recission of the Policy and an Order requiring National Western to pay Ms. Tromblay's initial premium into the Clerk's registry for holding until her estate is opened.

The Clerk is **DIRECTED** to **TERMINATE** this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**CHIEF UNITED STATES DISTRICT JUDGE**